The last case today, No. 241416, Naicom Corporation, et al. v. Dish Network Corporation, et al. Counsel for Appellants, please come up and introduce yourself on the record to begin. Good morning, Your Honors, my members of the Court. Attorney Rafael Castrolan, I represent plaintiffs in this case. Before I start my argument, I would like to reserve three minutes for rebuttal, Your Honor. You may. Can you get the microphone a little closer to you so we can hear you better? Yes, yes. So, three minutes for rebuttal, Your Honor. You may. Now, we submitted an extensive brief, and I'm going to concentrate on the salient facts and principles that justify that this Court set aside the District Court's dismissal and remand the case to continue with court proceedings. There are three important salient facts that are determinative in what the outcome of this case should be. To begin with, in 2017, the FBI went to Naicom's offices, spoke with the executives, and they showed them their licenses, and they showed them that they had a distribution authorization by the National Road Telecommunications Cooperative. So, before the warrant was requested, they already had verified by a personal visit. Mr. Lank, I think it would be helpful to the Court if you could, and if you want to do it by tying these facts to this legal question. Yes. A significant piece of the ruling as to the RICO claim is that there was no enterprise. So, could you just address the analysis the District Court gave of there not being an enterprise sufficiently pled and why you think that was wrong? Well, that is not correct because, number one, Naicom was the leader of the enterprise. Niagara Star was a subsidiary acting on behalf of Dish Networks Direct Supervision. Toltec also was a part of that conspiracy that they were conducting in order to steal Naicom's proprietary interest. And the concern the District Court raised is that the fact that there is a conspiracy can't also be the same exact evidence of the enterprise, and that the enterprise has to have some ongoing aims that they are conspiring to facilitate. Do you have a response to that? Dish Network has a history of continuity since 2002 up to 2020 with litigation because they are constantly trying to steal other companies' private information. So, the government was aware of this. The conspiracy alleged that they were trying to obtain the Disney operation private information of Naicom for them to appropriate it illegally because it wasn't authorized. Naicom never authorized that access to Dish Network. So, we have here that in conducting their RICO conspiracy, they engaged, Your Honor, in mail fraud because they bought boxes of Naicom sets, not for the purposes of using them legally, but one of them was even sent to the Dish Network Colorado entity where what they tried to do was reverse engineering. So, they conducted mail fraud. Is it your position that reverse engineering is illegal? Is reverse engineering illegal in your view? And that's why you think this adds up to mail fraud? Mr. Judge disagreed, and I haven't heard you explain why he was wrong. Well, if the purpose of the reverse engineering is to try to facilitate or obtain protected secrets of a company, it can become illegal because what you're doing is using the reverse engineering to penetrate without authorization a company's secret patents. Well, patents have nothing to do with this, but if somebody wants to try to analyze a bottle of Coca-Cola and figure out what's in the formula for the syrup, is that illegal? Well, they can do that, but again, it's one thing. Doing that does not violate a law, but when the purpose of what you're doing consists in actions that violate statutory protections, then you do have a problem with it. It's like everything else. You can use a warrant for a legitimate purpose, and the allegation of the court that the warrant was a legitimate activity that protected everyone is incorrect, because if you use a warrant for an illegal purpose, Your Honor, then you don't have the statutory protections that the statutes provide. Mr. Kestrelak, could I ask you, it seemed to me that the centerpiece of the district court's analysis across all of your legal theories was to look at the 10 allegedly false statements you said were included in the application in the affidavit that was applying for the search warrant. Yes. The district judge went through those carefully, about 10 pages of one of the opinions in particular. The Dish Niagara Star opinion is the first one at the top of the pile. What I didn't see in your briefs, as lengthy as they were, was a direct point-by-point rebuttal of the district court's analysis about why those statements did not undermine the validity of the warrant. Where do I find that in your brief? Well, Your Honor, if you look at the events, and this is why I want to concentrate on the three salient facts that contradict the sworn statement, Your Honor. Number one, prior to obtaining the search warrant, they had already verified that NIACOM had their licenses. Number two, after the search warrant occurred on August 27th, as the complaint alleges, NIACOM's executives and all of Plankton's executives met at the United States Attorney's Office with the prosecutors, the FBI agents, and the Dish representatives, Dish Niagara Star representatives, where, accompanied by their attorneys, they showed all of the licenses that they had. They demonstrated that they were a legitimate operation. That happened after the search, right? Excuse me? That happened after the search, correct? The first search. Immediately on August 27th, after the first search, they all met at the U.S. Attorney's Office, and they produced all of the evidence that they had a legitimate operation, which, at that meeting, the government recognized that they were operating legitimately, and what the government tried to do is to require them to sign a hold harmless agreement that they were not willing to do. And what was the third point? The third fact? The third fact, yes. Yes, I'm going through that right now. So, once you know, if the purpose of the warrant was because you're investigating piracy, once you know, the afternoon of August 27th, that there is no piracy, not only because during the search warrant they did not find any illegal boxes, but that the plaintiffs all came to the U.S. Attorney's Office and demonstrated that they were operating legally. And what do they do after that? By then, the investigation should have been closed, Your Honor, because the purpose was piracy. What did they do on August 29th? They go back there and search again without any justification. The piracy was no longer a justification for them to go back. So that event is an event that triggers responsibility. Now, this is important because what they did during these searches, the agents and the prosecutors, Your Honor, they violated all their regulations concerning cyber criminal investigations. And what they violated precisely facilitated DISH Network being able to enter into their facilities and downloading all their protected materials. For example, Your Honor, the FBI Domestic Investigation and Operations Guide states that prior to conducting a search warrant, you should verify licensing status with right holders before force. Before you sit down, because you just have a minute left before you have your rebuttal time, but in the last minute, when I asked you earlier about the enterprise issue, and you said, well, DISH Network in the past had a history of trying to steal things. The district court on that point said, in the course of its analysis as to why you hadn't sufficiently pled an enterprise for purposes of the RICO claims, that while plaintiffs assert that the DISH, NAGSTAR defendants, and DISH Corp. have been previously involved in trade secret misconduct, they do not allege that the federal defendants, or this association in fact as a whole, engaged or will engage in any misconduct unrelated to the one-off goal of stealing plaintiff's intellectual property. What's your answer to that part of the analysis? Well, Your Honor, the problem is that there was a serious red flag here that everyone ignores. And if you look at what they ignored, it leads to the clear inference with the well-plaid facts that there was a conspiracy for two years, from 2017 up to 2019, where they committed several acts that violated statutes that prohibited stealing the information that they stole. Your Honor, imagine DISH goes to the FBI and says, oh, we believe they are engaging in piracy, but they're not engaging in DISH Network's piracy, they're engaging in direct TV piracy. The FBI, if you have any sense of investigative intuition, would have said, well, why is DISH here complaining about direct TV when you're admitting that DISH Network is not being pirated? And then, if you take into account the continuity of the history of DISH Network stealing and infringing the statutory laws, then you have a history of continuity that is capable of occurring again. Thank you. Thank you. Thank you, Counsel. Attorney for United States Attorney's Office, please come up and introduce yourself on the record to begin. May it please the Court, Daniel Aguilar for the United States Federal Defendants here. The District Court issued a thorough opinion that closely examined plaintiff's allegation and dismissed the complaint for failure to state a claim. It went through and showed that while plaintiffs alleged that the Federal Defendants made false statements, the plaintiffs didn't identify any factual inconsistencies in the statements made in the search warrant application. Those were the 10 statements that the District Court walked through, I believe that's out of Appendix 268 to 274. Let me ask you, if you separate the Federal Prosecutors, you agree with the District Court they have immunity? Yes. Okay. And then, the other Federal Defendants, it would all boil down to a Frank's issue, am I correct? I think it boils down to, do you believe that plaintiffs have plausibly alleged that they entered into Rico Enterprises, Judge Barron was asking about, in a conspiracy to steal plaintiff's intellectual property? And so I think short of the conclusory allegations in the complaint, what it alleges is the FBI was presented with evidence of possible TV piracy. The FBI conducted its own investigation that seemed to corroborate those claims. It presented those facts to a neutral magistrate that said there's enough here for a search warrant. It executed a search warrant and on plaintiff's allegations that were accepting as true, they found no inculpatory evidence and they determined not to bring a criminal prosecution. That's how criminal investigations work. That's not sufficient to state a claim of a civil Rico conspiracy with violations of federal statutes, all of which, as we note at page 15 of our brief, have exceptions saying when it's lawful government activity there hasn't been a violation. There's a lot going on in this case. There's a lot of paper. On the Rico claims themselves, as I understand it, and I couldn't tell from the point you just made, not that it's wrong, it mashes a lot of different things together. If I understand the district court's opinion, one ground it's contending the Rico claim failed is that even if some of the allegations of the misconduct were true, it wouldn't matter because there was not an enterprise for purposes of Rico because of failures of proof distinct from what you were just talking about. One of those failures is the failure to show that the alleged association of fact had any ongoing plan beyond this, quote, one-off scheme. And in service of that, it identifies as the only allegations about some of those defendants, I guess just the private ones, as having had past misconduct but no indication that they then had any designs in the future. If I understood the thrust of what your opponent counsel was saying today is that, well, couldn't you plausibly infer from the allegations of the past misconduct, given the allegations of the present misconduct, that there was an enterprise in the sense that you could predict it would engage in activity in the future, so the district court's just wrong on that enterprise point. What do you think of that? Yeah, I don't think that's sufficient to state a claim. As I understood it, the previous instances they're pointing to are some patent trademark disputes and then a telemarketing act claim that I think was just settled fairly recently. Those aren't connected to the factual dispute here. And as I understood it, plaintiffs aren't pointing to anything as an enterprise that the federal defendants are involved in other than the DISH Network folks came to them with evidence and then they executed these searches. For an enterprise under First Circuit case law, it needs to share a common purpose as an ongoing organization instead of an ad hoc one-time criminal venture. They haven't really ledged that. With the enterprise that they've ledged, the FBI office exists. The U.S. Attorney's Office exists. And then even crediting some of the conclusory allegations, they for no apparent reason went to steal somebody else's intellectual property for somebody else for no motivation. If that were right, then that would be take care of all of the RICO claims. What's then left in the case? I think if you take that framework too, it also gets rid of the statutory claims, right? Because what you're saying is this is the FBI and the U.S. Attorney's Office. Even if you think maybe it wasn't the – if there wasn't exculpatory information or some of the information that they thought was inculpatory actually has innocent explanations to it, that doesn't defeat probable cause. And when you have probable cause, you have a reason to go to a magistrate and say, we think there's something going on here. We need to investigate. We need a search warrant. And the affidavit goes through that. It's in the record. The inspector explains affidavit to the court explaining here's all the cooperating evidence. We called up the cable cooperative. They said Nikon wasn't a member. We called up HBO. They said they didn't have a licensing agreement with it. There are five antennas on Nikon's data center. It appears that they're pointed at DirecTV. Now, Nikon says there is an innocent explanation to all this. We have these licensing agreements. You guys just didn't figure it out in time. Even crediting that as true, that doesn't mean that when you apply for and execute a search warrant, it turns into a civil reco conspiracy. And for that same reason, there are the safe harbors and the statutes for lawful activity. Mr. Dragler, could you address the second search of August 29th? That seems pretty unusual. As the district court noted, there was going back to the data center. Plaintiffs alleged that when that happened, there was also trying to get past some of the password protections there to get some of the information that was on the computer. In the affidavit, it explained sometimes information is deleted or it passed passwords. That's why you need to get in there to get to the computer forensic examination. As I take plaintiffs' claims, they're saying that was a second search that didn't have a separate search warrant for it. Within the scope of the original warrant, but going back is certainly unusual, and they've cited us to a Sixth Circuit case that suggests that more case-by-case analysis would be necessary to evaluate the legitimacy of that second search. And I think that's exactly the point. There's a general rule that says you can have reasonable continuations, but you do need a case-by-case analysis. So it's their burden in the complaint to allege specific factual allegations to show, hi, this was all just a ruse. When there are allegations here, completely consistent with lawful conduct, saying we got a search warrant. It says execute before September 4th. It's still not September 4th. It seems to be a reasonable continuation of the first search. Maybe you dispute that. But even if the FBI agents or the U.S. Attorneys were misinterpreting this court's precedence on the reasonable continuation doctrine or misinterpreting how the search warrant was to effect, maybe that does something in a criminal case on a suppression of the evidence motion. You could consider that and litigate it. But it doesn't give rise to civil recall conspiracy against these individuals, without more. They're the masters of the complaint. They can plead specific factual allegations. But I think it's telling in their 70-page reply brief that they don't cite the complaint. Let me ask you, if I could, one other question. We obviously have the RICO umbrella here, but there are other statutory claims. You're relying on the law enforcement exceptions. Yes. On page 15 of our brief, footnote 4, we cite to each one of those statutes in the relevant text there. So my hypothetical is, let's suppose you've got a rogue agent who accepts a bribe from a private entity and carries out what looks like legitimate law enforcement activity, but it's not. You'd prosecute that guy, right? And he's not able to defend those statutory claims under, say, the Computer Fraud and Abuse Act or the Stored Communications Act. It's not a complete defense to him that, hey, I was in the FBI under those circumstances. Right. We're not making a categorical claim that as soon as you're doing anything in there, right? There's the Whitey Bolger case with the FBI agent there. Bribes and kickbacks, obviously. What I'm saying is that resolving the RICO claim doesn't necessarily resolve the other statutory claims without looking at the allegations of misconduct. That's why I was focusing in on the allegedly false statements in the affidavit. And that's why I think going through those allegedly false statements, right, most of them are saying you didn't find inculpatory evidence, therefore you didn't have probable cause. The court made his analysis and I haven't seen a rebuttal of it. Exactly. And so we think that's the reason that you're getting rid of the RICO claims. Obviously, there are other problems with the RICO claims, but if you get rid of them for that reason, saying this is just investigation, it also defeats the statutory claims. And we'd ask this court to firm. One last quick question. If we were to find that these RICO claims were plausible and they can proceed, wouldn't this have like a chilling effect on probably every type of investigation the government has? Because then you're the government's subject to RICO claims every time, at least for plausibility purposes, correct? Correct. And that's why you have to allege more. You have to allege something that's inconsistent. So pretty high bar. Yes. Yes, Your Honor. Thank you. Thank you. Thank you, counsel. Will attorney for Dish Network Corporation please come up and introduce? No, Mr. Castro-Lang. Yes, Your Honor. I'm sorry. You go. You have one minute. Counsel, you have a six-minute argument. May it please the court. Chad Hagan on behalf of the private defendants. This case exemplifies the need for Twombly and Iqbal's plausibility filter. Appellants allege a far-reaching conspiracy between the FBI, the U.S. Attorney's Office, and multiple private companies. But as Judge Woodcock explained across four thorough and detailed orders citing this circuit's precedent, when you strip away the conclusions and the speculation, all they have described is routine law enforcement consisting of an FBI investigation into money laundering and piracy, a magistrate-issued warrant, and technical assistance provided by the private companies in execution of that warrant. This court can affirm dismissal of the RICO claims on three independent grounds. First, which the court has already noted, there was no enterprise. Appellants lump all 21 federal and private parties together and label them in association and fact. But under Boyle, they must allege a structure separate and distinct from the participants themselves. Here, the facts only allege that each of these individuals and entities were engaged in their normal business or government functions. Just to Judge Hamilton's question, if we were to agree on that point, what would then still be left for us to decide? Well, if you agree that there's no enterprise, the RICO claims go. And then what's left in the case for us to decide? I think then you look at the non-RICO claims in counts three through seven, but I believe that those claims are resolved by the district court after he resolved the defendant's Franks v. Delaware challenge. But does it go the other way? In other words, once we resolve those non-RICO claims on that ground, does that necessarily defeat the RICO claim? I think they're both related because they both – That's not what I was asking. If we were to resolve the non-RICO claims on the Franks ground you just identified, presumably once we do that analysis, if it came out your way, you're saying that defeats every one of those non-RICO claims. Correct. Does it then automatically defeat the RICO claim as well? I believe it does because that goes – That's just what I wanted to confirm. So the RICO analysis, in a sense, is unnecessary to get into unless we conclude there's some merit to the statutory claims. Well, I think you can look at it from both directions. You need racketeering activity, correct? Correct, because we have just focused on the enterprise element. But what Judge Woodcock said is even if they got there, which they didn't, RICO still failed because there was no pattern with continuity, and the predicate acts weren't chargeable. So even if they got past the enterprise element, which we submit they cannot, RICO claims still fail. The RICO analysis is just parasitic on the analysis of the statutory claims, given the ground you're saying those statutory claims fail. If they do, all of them, that's it. The RICO claim can't succeed. Is that correct? That's correct, Your Honor. As I mentioned, the second and third arguments that support affirmance of the RICO claim dismissal are a lack of continuity and a lack of chargeable predicate acts. A RICO pattern requires either a closed-ended series over a substantial duration or an open-ended threat of criminal repetition. This particular case involved a single search warrant, a single investigation, and a natural termination point. This circuit has already rejected that same type of single-scheme allegations as failing the continuity requirement in Feinstein and systems management. Moreover, there are no allegations in the second amended complaint that the federal and the private defendants continued to operate after the execution of the warrant. As a result, the district court correctly found that there was no continuity, whether you look at it through an open-end or closed-ended lens. With respect to the chargeable predicate acts, they rely almost exclusively on mail and wire fraud, but the district court found that that claim failed on two grounds, materiality and causation. The only argument that they allege for mail and wire fraud is that Toltec's use of an undercover alias somehow constituted fraud. The district court carefully analyzed that and said, no, Toltec paid you for the receiver, they paid you for the monthly service, and so their decision to use an undercover name in the operation did not materially affect NIACOM's decision to sell the product. Even if it did, there's no causation. The case law from this circuit is clear that an action by a government, in this case issuance of a warrant, is an intervening superseding act that breaks the chain of causation. Their argument that the warrant fails under Franks v. Delaware was carefully analyzed by Judge Woodcock and rejected on both elements. First, they failed to make the required substantial preliminary showing. And second, even if they did, the court went through all ten of the statements and said, A, they're not material, and B, even if we exclude them from the FBI's application for the warrant, there still was sufficient unchallenged evidence to support probable cause. That included screenshots of the defendant's service during the testing, the FBI phase. There were multiple channels, from DirecTV, from HBO, from Cinemax, and the FBI agents contacted each of those rights holders who confirmed that NIACOM did not have, and this is important, they did not have a commercial redistribution right. What NIACOM produced to the FBI was an individual bill for one month of service for a residential account. They were then using that to retransmit and charge their customers. That is the genesis of the piracy investigation. Thank you. Thank you, counsel. Attorney Castro-Lang, you have a three-minute rebuttal. May it please the Court, Your Honor, the Court and the defendants have concentrated on RICO, but this is not just a RICO case. We have several causes of actions that are based on statutory violations, and these statutory violations, not only are they asserted with factual precision in the complaint, but the record has over 300 exhibits that demonstrates that the allegations made to support those other causes of action have merit, Your Honor. Once they met on August 27th, there was no continuity left because they conceded that they were operating legally. And what did they do the 29th, Your Honor? They didn't go to investigate piracy, Your Honor. They went into DVD IP holdings, PayLink and Kairos LLC, whose systems contain multicast network architecture, payroll and human resources codes, propriety, trade secret materials that had nothing to do with television piracy. So there's no justification here for them to violate the statutes. Let's forget about RICO. The government, Your Honor, ignored important rules that they had to follow, Your Honor. Prior to obtaining a search warrant, they had to corroborate probable cause by contacting actual contact owners, not competitors. They could have subpoenaed all the other companies to verify whether they had a license. They could have gone back again to verify with NIACOM. Your Honor, they should avoid conflicts of interest in any appearance of failing a commercial complainant. Your Honor, here they definitely were acting to further the interests of this network. Look at the problems with the actual searches. Their rules state that you need to preserve digital evidence through agent-controlled imaging, hashing and chain of custody. Allow private technical assistance only under continuous agent supervision and within the warrant scope. None of that occurred there. There's physical evidence of this network going on their own and downloading these other corporations that have nothing to do with IPT. Thank you very much. Thank you, Counselor. That concludes arguments in this case. Okay, before we recess, I just want to thank our colleague, Judge Hamilton from the Seventh Circuit, for sitting with us for this week. It marks the end of his time on the bench with us for this sitting, but not the end of his work for us. But we really appreciate you being here as well as your law clerks. Thank you. Thank you. All rise. This session of the Honorable United States Court of Appeals has now recessed. God save the United States of America and this honorable court.